## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TYRONE SYKES                              *

     Plaintiff                         *

     v.                                *          Civil Action No.: CCB-05-2846

WICOMICO COUNTY, et al.                   *

     Defendants                        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Deputy John Alessandrini and Deputy Howard Phillips, Defendants, by KARPINSKI, COLARESI & KARP, KEVIN KARPINSKI and VICTORIA M. SHEARER, their attorneys, respectfully submit this Reply to Plaintiff's Opposition to their Motion for Summary Judgment.

Plaintiff's Opposition contains broad generalizations regarding the alleged acts of the "the Defendants" while failing to recognize that Plaintiff was unable at his deposition to identify who allegedly did what and that it was a "Deputy Arnold" who allegedly kneed Plaintiff in the face while he was allegedly handcuffed. Deputy Arnold is not a Defendant herein. The State of Maryland also is not a Defendant herein, and cannot be a Defendant inasmuch as Plaintiff failed to provide the State Treasurer with the requisite written notice within one year of the occurrence and obtain the required denial of claim prior to filing suit under State law against Deputies Phillips and Allessandrini.

I.      **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S FEDERAL CLAIM ASSERTING "UNLAWFUL SEARCH."**

Plaintiff's federal Fourth Amendment claim asserts unlawful search only.  Defendant has asserted that the "search" of Plaintiff was lawful because it was a search incident to a lawful arrest.  The arrest was lawful because Defendants had probable cause to arrest Plaintiff.

Plaintiff argues that Defendants did not have probable cause to arrest him because the "State District Court" at his criminal trial found that there was not probable cause to arrest him.  Plaintiff further asserts that the State District Court's finding regarding the existence of probable cause is "evidence" of the lack of probable cause, citing Banks v. Montgomery Ward & Co., 212 Md. 31, 40 (1957).  Plaintiff's Opposition, p. 11-12.  Plaintiff's assertion is, of course, entirely incorrect.  The State District Court's determination of the legal issue of probable cause has no bearing whatsoever upon this Court's analysis of Plaintiff's federal claim.  See, e.g., Wilkerson v. Hester, 114 F. Supp.2d 446, 457 (M.D. N.C. 2000)("probable cause is determined by viewing a snapshot in time: at the time of arrest, did the officer have reason to believe that the suspect had committed a criminal offense? Whether a jury, judge, or prosecutor later acquits or dismisses a charge is not relevant to the probable-cause inquiry.").

Plaintiff argues that Defendants lacked probable cause to arrest him for trespass, and that the search was therefore illegal, because Plaintiff was lawfully on the property.  This argument misses the mark entirely because the issue is not whether Plaintiff generally or initially had the right to be on the Stewart Funeral Home property.  Rather, the question is whether he had the right to remain there in the midst of police processing of the arrest of Albert Flow and after the

Deputies repeatedly instructed him to leave.  There is no dispute that when Plaintiff arrived in the parking lot of the Stewart Funeral Home, he got out of his vehicle because he recognized Flow and then Plaintiff began yelling to Flow and then at the police for allegedly treating Flow poorly. Defendant's Exhibit 9, p. 37-40.  Thus, in addition to the fact that the Deputies were generally attempting to clear the lot of trespassers, they also had the right to order Plaintiff to leave inasmuch as he was interfering with the Deputies' ability to complete their arrest of Flow, in a tense situation in which one or more crowds were gathered around watching the police activity.[1] The Deputies had every right to order Plaintiff to leave the premises, regardless of Plaintiff's claim that he initially went to the Funeral Home to meet with someone.  In other words, regardless of whether Plaintiff initially intended to visit someone at the Funeral Home, when Plaintiff repeatedly disobeyed the Deputies' entirely lawful orders for him to leave, the Deputies had every right to arrest Plaintiff.  Plaintiff had no legal right to resist that lawful arrest.[2]  Moreover, under federal law, Plaintiff had no right to resist arrest even if the arrest was unlawful.  See, e.g., U. S. v. Sprinkle, 106 F.3d 613, 619 and n.4 (4th Cir. 1997)(if a suspect's response to illegal stop is itself a new, distinct crime, then police constitutionally may arrest suspect for that crime and evidence seized in search incident to that lawful arrest is admissible; strong policy reason exists for holding that new and distinct crime).

_____

[1]     Plaintiff's assertion that the Deputies are allegedly at "fault" for the crowd gathering is both incorrect and entirely irrelevant.  There is no dispute that there was a large crowd of onlookers when Plaintiff arrived.  Plaintiff described the crowd as a "mob." Exhibit 9, p. 45.

[2]     Plaintiff 's allegation that excessive force was used to arrest him is not part of his federal Fourth Amendment claim but, rather, is brought pursuant to State law.

The Deputies' alleged subjective intent or alleged "frustration" plays no part in the analysis of Plaintiff's Fourth Amendment claim. Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken. Mazuz v. Maryland, 442 F.3d 217, 226 (4th Cir. 2006).

With regard to the question of whether Defendants had probable cause to arrest Plaintiff for trespass, as opposed to the crimes of failure to obey the lawful order of a police officer, disorderly conduct, and/or disturbing the peace (for which Plaintiff was not charged), they possessed such probable cause. The owner of Stewart Funeral Home called police to report that there were several men loitering, drinking beer and selling drugs in the parking lot and that they did not have permission to be there. This had been a continuing problem for Ms. Stewart. When Plaintiff arrived and started yelling to Mr. Flow, asking him if he was okay, and yelling to the Deputies as to why they were arresting Flow, the police had reason to believe that the two men knew each other. The Deputies therefore had reason to believe that Plaintiff was a part of the group of men that was loitering, drinking beer and selling drugs in the parking lot. The Deputies had reason to believe, therefore, that Plaintiff was also a loiterer and trespasser and, thus, it was reasonable for them to order Plaintiff to leave and to arrest him for trespassing. See, e.g., Brown v. Gilmore, 278 F.3d at 367 ("For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required.").

Trespass is a statutory crime found in the Maryland Code, Criminal Law Article, Section

6-403.  Section 6-403 is entitled "Wanton Trespass on Private Property," and prohibits "entering and crossing property" and "remaining on property" "after having been notified by the owner or the owner's agent not to do so." There is no dispute that Plaintiff remained on private property "after having been notified by the owner or the owner's agent" (i.e., the Defendants) that he was trespassing and needed to leave.  Defendants responded to the call from dispatch and told Plaintiff that the owner did not want him (or anyone) on the property at that time.  Defendants specifically told Plaintiff many, many times that he was trespassing, that he needed to leave, and that if he did not leave he could be arrested.  Plaintiff nevertheless remained on the property, arguing with Defendants continuously regarding whether or not he was trespassing and whether he needed to leave the property.  The Deputies were not required to believe Plaintiff when, after he was ordered to leave, he finally claimed that he was there to see someone who worked at the Funeral Home.  The Deputies had the right to comply with Ms. Stewart's request that the lot be cleared of all individuals because she did not want anyone there. It is obvious, and Plaintiff does not provide any evidence otherwise, that the business was closed at that time.[3]  At the very least, it was entirely reasonable for Defendants to assume that the business was closed.  Under the totality of the circumstances, probable cause existed for Defendants to arrest Plaintiff for the crime of trespass.  The search incident to that arrest was therefore lawful.

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE FEDERAL CLAIM BASED UPON QUALIFIED IMMUNITY.

Defendants are entitled to summary judgment based upon qualified immunity with respect

---

[3]      Plaintiffs did not depose Ms. Stewart, nor did they obtain an affidavit from her.

to Plaintiff's federal Fourth Amendment claim that Plaintiff was unlawfully searched because a reasonable police officer in Defendants' positions would have believed that he had probable cause to arrest Plaintiff for trespass.  As already discussed above, Defendants did not violate Plaintiff's Fourth Amendment rights by searching him incident to his lawful arrest.

It is apparent from Plaintiff's assertion that "Sykes is entitled to have his claim heard by a trier of fact and not summarily dismissed" that Plaintiff does not understand the concept of qualified immunity, its purposes or its parameters.  Defendants have not asserted "public official immunity" under State law; rather, Defendants have asserted federal qualified immunity with respect to Plaintiff's assertion in Count I that he was unlawfully searched in violation of federal law.  Qualified immunity is an entitlement not to stand trial.  Saucier v. Katz, 533 U.S. 194, 200-01 (2001).  It is an immunity from suit rather than a mere defense.  Id.  Qualified immunity is to be determined at the earliest possible stage of the litigation.  Id.  Like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.  Id.  If there are no facts in dispute regarding whether the defendants are entitled to qualified immunity, as in this case, it is a question of law for the court.  Id.

Even assuming, for argument's sake, that Defendants violated Plaintiff's constitutional rights, it is clear that they made a reasonable mistake and that Defendants are therefore entitled to qualified immunity.  See Mazuz v. Maryland, 442 F.3d 217 (4th Cir. 2006).  Qualified immunity shields a police officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends law governing circumstances he confronted.  Brosseau v. Haugen, 543 U.S. 194, 198-99 (2004).  In other words, whether the right in question is "clearly established"

6

depends on whether it would be clear to reasonable officer that his conduct was unlawful in the situation he confronted.  Id.

It is apparent that Defendants could have arrested and charged Plaintiff with a number of crimes based upon Plaintiff's conduct and his refusal to leave, i.e., disorderly conduct, hindering police, disturbing the peace or failure to obey an officer's lawful order.  Defendants charged Plaintiff with trespass. At best, therefore, Defendants allegedly charged Plaintiff with the "wrong crime."  If so, this was a reasonable mistake under the circumstances inasmuch as Plaintiff had clearly committed various misdemeanors by refusing to leave the premises.  Therefore, even if the Court finds that probable cause was lacking to arrest Plaintiff for trespass, the fact that probable cause was present to arrest Plaintiff for other crimes is sufficient to entitle Defendants to qualified immunity.[4]

Plaintiff claims that there are material facts in dispute precluding summary judgment based upon qualified immunity.  Specifically, Plaintiff claims that the facts in dispute are "whether there was probable cause to arrest Sykes for trespassing, whether excessive force was used during the course of that arrest, and whether the search of Sykes was incident to a lawful arrest."  Plaintiff's Opposition, p. 15.  Whether there was probable cause to arrest Plaintiff is not a material fact in dispute with respect to the qualified immunity inquiry because Defendants accept, for purposes of their claim to qualified immunity under the second prong of the analysis, that they did not have probable cause to arrest Plaintiff for trespass.   Defendants assert, however, that even if they did

_____

[4]      Again, this inquiry is purely objective and, therefore, Defendants' alleged motivations or feelings play no part in deciding whether Defendants are entitled to qualified immunity.

not have probable cause to arrest Plaintiff for trespass, that they had probable cause to arrest Plaintiff for various other crimes and that they simply made a mistake in charging him with the crime of trespass. That mistake was objectively reasonable and, thus, Defendants are entitled to qualified immunity.

Plaintiff's next assertion, that whether excessive force was used is a fact precluding summary judgment based on qualified immunity is plainly incorrect. Plaintiff's federal claim in Count I does not assert a claim for excessive force - it asserts an unlawful search only. Thus, whether or not excessive force was used has no bearing upon the inquiry of qualified immunity as to Count I.

Plaintiff's third alleged dispute of fact, i.e., whether the search was unlawful does not preclude summary judgment based upon qualified immunity because, first, the issue of whether probable cause existed is a legal one and, second, Defendants have asserted that even if probable cause was lacking, that they are entitled to qualified immunity based upon a reasonable mistake. For all of the foregoing reasons, Defendants are entitled to summary judgment with respect to Count I (the only federal claim in the Complaint) asserting an unlawful search.

## III.     PLAINTIFF'S STATE LAW CLAIMS.

### A.     All of Plaintiff's State Law Claims Are Barred Due to Plaintiff's Failure to Comply With the Notice Requirements of the MTCA.

Plaintiff's arguments with respect to his failure to provide the requisite, timely notice to the State Treasurer as a pre-condition to suit are simply frivolous.

It is beyond cavil that in order for a plaintiff to bring a claim against the State of Maryland,

the plaintiff must comply with the notice requirements of the MTCA.  See, e.g., Gray v. Maryland,

228 F. Supp.2d 628, 640-41 (2002).  Specifically, under the MTCA, a claimant must submit a written

claim to the Treasurer of the State of Maryland within one year of the date of injury to person or

property.  Plaintiff did not comply with the notice requirements of the MTCA and, therefore, all

of Plaintiff's state claims are barred.

The timely filing of a claim with the State Treasurer's Office is a condition precedent to

bringing an action against the State under the MTCA.  Gray, 228 F. Supp.2d at 640-41.  See also

Haupt v. State, 340 Md, 402, 667 A.2d 179, 183 (1995).  The notice requirement of the MTCA,

requiring that notice be given to the State within one year after an injury, is mandatory, so that

failure to provide the requisite notice bars any suit against the State, and the bar applies even

though the State may have suffered no prejudice from plaintiff's failure to comply with the

requirement. Md. Code, State Gov't Art., § 12-106(b);  Williams v. Md. Dept. of Human Res., 136

Md. App. 153, 764 A.2d 351 (2000).

The incident in this case occurred on September 23, 2004.  With the exception of Plaintiff's

malicious prosecution claim, Plaintiff was therefore required to provide notice to the State, in the

manner and form required by the statute, before September 23, 2005.  Plaintiff failed to do so.[5]

A malicious prosecution claim does not accrue until the underlying prosecution has been

resolved in the plaintiff's favor.  Gray, 228 F. Supp. 2d at 641 n.8 (citing Heron v. Strader, 361 Md.

258, 761 A.2d 56, 59-62 (2000)).  Plaintiff's malicious prosecution claim arose on the date Plaintiff

---

[5]     Plaintiff sued Wicomico County, and provided a notice of claim letter to the "City Council"
of Salisbury under the Local Government Tort Claims Act.  However, Plaintiff did not provide
notice to the State under the MTCA.

was found not guilty of the charges brought against him, November 9, 2004.  <u>See</u> Defendant's Exhibit 13.  Plaintiff failed to provide the State of Maryland with the required notice within one year of that date.  Therefore, all of Plaintiff's state law claims are barred.

Plaintiff asserts the entirely irrelevant argument that he was allegedly unaware of the notice requirement.  This does not excuse the failure to provide the requisite notice.  Plaintiff's assertion that he "filed the requisite notice with the County Government" is simply a misrepresentation.  Plaintiff's Opposition, p. 15.  Plaintiff sent a letter only to the City of Salisbury.  <u>See</u> Plaintiff's Exhibit 7 (letter to the Salisbury "City Council").

Plaintiff's assertion that he "substantially complied" with the notice requirement is absurd, and his rationale for this assertion is bizarre.  The State was not provided with <u>any</u> notice at all and, therefore, it is difficult to perceive how Plaintiff could possibly assert "substantial compliance."  There was no compliance whatsoever.  Plaintiff claims that the Deputies's alleged "failure" to "report" the incident to their "employer" is the alleged reason for Plaintiff's failure to provide the requisite notice.  In addition to the fact that this argument defies logic and the explicit requirements of the MTCA, there is no case, and Plaintiff has of course cited none, which counsels such a theory.  The statute clearly and unambiguously places the burden of providing written notice to the State Treasurer on a claimant within one year of the alleged injury.  The claimant must obtain the written decision of the Treasurer (or the requisite amount of time without a response by the Treasurer must pass) before Plaintiff is permitted to file a lawsuit.  There is no dispute that this did not occur in this case and, thus, Plaintiff's State claims are clearly barred.  Contrary to Plaintiff's theory, merely filing a premature lawsuit within the one year

10

period for written notice of a claim to the State Treasurer does not comply with the unambiguous requirements of the statute.

Nor is there any evidence whatsoever to support Plaintiff's bald speculation that "written notice" was provided "in the form of the Complaint" and that "the State Treasurer proceeded to investigate the claim." First, written notice as required by the statute is not satisfied by service of a complaint and, second, there was no service of a complaint on the State of Maryland and no evidence that any "investigation" whatsoever was performed by the State. The Complaint was served only on the Deputies and the County.

Plaintiff next contends that the Court should ignore the statute and Plaintiff's complete failure whatsoever to comply with it because "Sykes is entitled to a remedy for the tortious acts of the Defendants." Plaintiff's Opposition, p. 17. However, a court may not ignore the plain and unambiguous requirements of the MTCA notice statute or the cases interpreting and applying it simply to rectify Plaintiff's counsel's errors. Such errors are to be remedied, if at all, through a malpractice action.[6] Plaintiff's claim that the "actions of the Defendants and State Treasurer affirm that they have investigated the claim and prepared a defense" is absurd. There were no such "actions" by the State Treasurer or Defendants. Rather, Plaintiff simply failed to investigate the status of Defendants as State employees and failed to perform research which would have apprised him of the existence of the MTCA notice statute. Plaintiff plainly failed to comply with

---

[6]   Plaintiff asserts that he will not be provided a "remedy" unless the Court excuses his complete and utter failure to comply with the MTCA notice statute. However, Plaintiff had all available "remedies" but for his counsel's failure to comply with the statute. Therefore, to the extent Plaintiff is without a "remedy," it is purely through his own failures, and there is no reason whatsoever for the Court to excuse that failure.

the condition precedent of providing notice of claim to the State Treasurer within one year of his

alleged injury and, thus, his State law claims are all plainly barred.

**B.      Plaintiff's State Law Claims Are Barred by Statutory Immunity.**

Both Defendants are deputy sheriffs entitled to the qualified statutory immunity provided

in Maryland Code, Courts and Judicial Proceedings Article, §5-522(b).   Section 5-522(b) provides

that state personnel "are immune from suit in courts of the State and from liability in tort for a

tortious act or omission that is within the scope of the public duties of the State personnel and is

made without malice or gross negligence . . ."   The immunity "fully applies to non-malicious

intentional torts and constitutional torts." Id. Thus, Defendants are entitled to summary judgment

with respect to all of Plaintiff's state claims unless Plaintiff comes forward with evidence that

Defendants acted with malice or gross negligence.  Lee v. Cline, 384 Md. 245, 261, 863 A.2d 297,

307 (2004)(the purpose of the Tort Claims Act's immunity is to insulate state employees generally

from tort liability if their actions are within the scope of employment and without malice or gross

negligence).[7]

The Amended Complaint alleges that Defendants acted with malice; however, Plaintiff has

failed to come forward with any evidence of malice by Defendants.  The malice required is "actual

---

[7]       In Lee v. Cline, the Court explained that "[w]ith regard to torts encompassed by the
Maryland Tort Claims Act, the statute generally waives sovereign or governmental immunity and
substitutes the liability of the State for the liability of the state employee committing the tort.
Accordingly, where the immunity of the Tort Claims Act is applicable, the injured party will
ordinarily be able to recover against the State as long as he or she complies with the procedural
requirements of the Tort Claims Act." Id., 384 Md. at 262, 863 A.2d at 307.  Plaintiff in this case
failed to sue the State of Maryland and failed to comply with the procedural requirements of the
Act and, thus, cannot now or ever sue the State of Maryland regarding this occurrence.

malice," which is defined as an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate," the purpose being to deliberately and willfully injure the plaintiff. <u>Shoemaker v. Smith</u>, 353 Md. 143, 725 A.2d 549 (1999)(citing <u>Arrington v. Moore</u>, 31 Md. App. 448, 464, 358 A.2d 909, 918, <u>cert</u>. <u>denied</u>, 278 Md. 729 (1976), and <u>Leese v. Baltimore County</u>, 64 Md. App. 442, 480, 497 A.2d 159, 179, <u>cert</u>. <u>denied</u>, 305 Md. 106, 501 A.2d 845 (1985)(actual malice needed to defeat official immunity requires "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate," the purpose being to deliberately and wilfully injure the plaintiff); <u>Davis v. DiPino</u>, 99 Md. App. 282, 290-91, 637 A.2d 475, 479 (1994), <u>rev'd on other grounds</u>, 337 Md. 642, 655 A.2d 401 (1995); <u>Nelson v. Kenny</u>, 121 Md. App. 482, 487, 710 A.2d 345, 348 (1998)).  Defendants had legal justification to arrest Plaintiff, the force they used to subdue Plaintiff (who admittedly resisted arrest) was entirely reasonable, and there is no evidence that either Deputy had an evil or rancorous motive influenced by hate or a purpose of willfully injuring Plaintiff.  Because there is no evidence of any actual malice, Defendants are protected by qualified immunity and entitled to summary judgment with respect to all of Plaintiff's state law claims.

Plaintiff argues that there is a dispute of fact regarding malice "as to whether Defendants used conduct beyond what one would normally expect from a neutral and dispassionate law enforcement officer engaged in handling a suspected trespasser."  Plaintiff's Opposition, p. 18. In so doing, Plaintiff cites cases to the effect that prior incidents between the parties can be evidence of malice.  However, there were no "prior incidents" between Plaintiff and Defendants from which an inference of malice can be discerned.  They did not know each other at the time of

the incident.  As for Plaintiff's theory that the Deputies' adrenaline was "pumping" from their chase of another suspect, that is not evidence of any malice toward Plaintiff, even if an inference could be drawn that the Deputies were somehow "annoyed" by the chase of Vincent Parker.  To the degree the Deputies were "aggravated" by Plaintiff's failure to obey their repeated orders for Plaintiff to leave, it is unremarkable that Defendants may have been generally "aggravated" by Plaintiff's refusal to leave and his defiant and obnoxious behavior toward them.  Mere alleged general "aggravation" of a police officer does not lead to a reasonable inference of actual malice. There is no evidence, such as slurs, insults or other behavior, from which a reasonable inference of malice toward Plaintiff could be discerned by the trier of fact and, thus, Defendants are entitled to statutory qualified immunity.

> **C.**    **Defendants Are Entitled to Summary Judgment With Respect to Plaintiff's State Law Claims of "Excessive Force" and "Violation of Maryland Declaration of Rights."**

Even assuming Defendants do not possess statutory immunity, they are entitled to summary judgment with respect to Plaintiff's state law excessive force claims in Counts VI and XIV and his "Violation of Maryland Declaration of Rights" claims in Counts VII and XV.  These claims appear to be redundant, inasmuch as Plaintiff asserts in his Maryland Declaration of Rights claims that the Defendants "unlawfully detained, searched and seized, and assaulted Plaintiff," (Amended Complaint, ¶¶45, 83), and inasmuch as there is no independent tort for "excessive force" (as that would merely constitute a "battery").  Accepting the facts as testified to by Plaintiff as true, there is no evidence that Deputies Phillips or Alessandrini used an unreasonable amount of force under the circumstances and, therefore, they are entitled to summary judgment with

respect to Plaintiff's state constitutional claims asserting use of excessive force.

Force is not "excessive" if it is objectively reasonable in light of the facts and circumstances confronting the officer, without regard to his underlying intent or motivation. <u>Pittman v. Nelms</u>, 87 F.3d 116, 120 (4th Cir. 1996); <u>Martin v. Gentile</u>, 849 F.2d 863, 869 (4th Cir. 1988).  Moreover, it is well established that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  <u>Graham v. Connor</u>, 490 U.S. at 396; <u>Saucier v. Katz</u>, 533 U.S. 194 (2001).

In <u>Brown v. Gilmore</u>, the plaintiff alleged that the officer used excessive force in arresting her because he "handcuffed her, causing her wrists to swell, dragged her to the car and then pulled her into his cruiser." <u>Id.</u>, 278 F.3d at 369.  The plaintiff, as the Plaintiff herein, alleged no injury of any magnitude. <u>Id.</u>  The Court held that the circumstances justified the use of force and that there was no Fourth Amendment violation.  Officer Gilmore was attempting to arrest Brown for disobeying his lawful order. The Court stated that:

> **It was not unreasonable for the officers to believe that a suspect who had already disobeyed one order would balk at being arrested.** Handcuffing Brown and escorting her to a police vehicle was thus reasonable under the circumstances. **For courts to fine-tune the amount of force used in a situation such as this would undercut the necessary element of judgment inherent in a constable's attempts to control a volatile chain of events.**

<u>Id.</u> (emphasis added).

In the instant case, viewing the facts in a light most favorable to Plaintiff, it is clear that neither Deputy Phillips nor Deputy Alessandrini used an unreasonable amount of force to effectuate Plaintiff's arrest.  As explained above, the Deputies had probable cause to arrest

Plaintiff for the crime of trespass.  Plaintiff admitted at his deposition that the Deputies, who were in the midst of arresting and securing Mr. Flow while a large crowd looked on, repeatedly ordered Plaintiff to leave and that, in response, he repeatedly argued with them and refused to leave.  <u>See</u>, Exhibit 9, Plaintiff's Deposition, pp. 40-47.  Because Plaintiff had already disobeyed the Deputies' repeated orders to leave the property, it was reasonable for the Deputies to believe that Plaintiff would also "balk" at being arrested.  <u>Brown v. Gilmore</u>, <u>supra</u>.  Moreover, Plaintiff admitted at his deposition that when Deputy Phillips told him he was under arrest and grabbed his wrist to handcuff it, Plaintiff "turned around and grabbed his [Deputy Phillips'] arm."  <u>Id.</u>, p. 45-50.  Specifically, Plaintiff testified that "[w]hat happened is, he grabbed mine [arm] first, and then afterwards, after I felt him grab my arm, then I just grabbed his."  <u>Id.</u>, p. 49.

Although Plaintiff offers various excuses as to why he grabbed Deputy Phillips' arm, those excuses are not relevant.  Plaintiff admits he grabbed Deputy Phillips' arm and, thus, an objectively reasonable officer in Phillips' position of course would have believed Plaintiff was resisting arrest.  Plaintiff's argument that he was not resisting Phillips' attempt to arrest him because he did not grab Phillips' arm "violently" is simply ludicrous.  Grabbing a police officer's arm when he grabs your arm to handcuff it as he is telling you that you are under arrest is clearly resisting an arrest.

Plaintiff also admitted at his deposition that he continued to resist arrest, as the Deputies struggled to subdue him.  Plaintiff testified that both Deputies were "steady hollering" for him to "get down, you're under arrest" and that Plaintiff failed and refused to get down or to allow the Deputies to handcuff him.  <u>See</u>, Exhibit 9, Plaintiff's Deposition, p. 52-53; 57-58.  Plaintiff

16

further testified that at this point one of the Deputies warned him to get down or he would pepper spray him, and that Plaintiff still refused to get down. Id., p. 53-55. Plaintiff still did not comply and, instead, he "started turning around" and trying to walk away from the Deputies. Id., p. 55-58 (Plaintiff testified that he "started walking towards the parking lot" as the deputies were "steady hollering, get down."). As Plaintiff "turned and started walking back towards the blacktop," one deputy was still on his back, and another deputy was "still trying to pull [Plaintiff's] arm." Id., p. 56. A large crowd was watching during this entire period.

Plaintiff finally fell to his knees and the Deputies struggled to pull his arms behind his back to handcuff Plaintiff. Id., p. 56-61. The Deputies pushed Plaintiff's head to the ground and were finally able to get handcuffs on him. Id., p. 61-62. The Deputies then sat Plaintiff up and decontaminated the pepper spray. This was the extent of force utilized by Defendants to effectuate Plaintiff's arrest. In light of Plaintiff's resistance and the totality of the circumstances, the force utilized was plainly necessary and reasonable and that necessary to effectuate Plaintiff's arrest.

While Plaintiff alleges that a third non-uniformed officer with "shorts on" rushed up and kneed him in the face or neck after he was handcuffed, that officer (a Deputy Arnold) was not sued and is not a Defendant herein.[8] Over $600.00 cash and a cell phone were found during a

---

[8]    Plaintiff was unable to state which deputy allegedly pepper sprayed him after he was handcuffed, but he testified that it was the third officer with the "shorts on" who allegedly kneed him. Exhibit 9, p. 64-65. Neither Phillips nor Alessandrini were wearing shorts. It is undisputed that Deputy Phillips never utilized his pepper spray, and there is no evidence whatsoever to contradict the Deputies' testimony that Alessandrini used his pepper spray once, while Plaintiff was standing up and resisting arrest.

search of Plaintiff and, during the ride to Central Booking, Plaintiff apologized to Deputy Phillips for the incident.[9] Id., p. 69; 73-74.

Plaintiff admitted at his deposition that he has no recollection of either of the Deputies he has sued nor does he have any idea which Deputy allegedly did what on the date of Plaintiff's arrest. See, Exhibit 9 (Plaintiff's Deposition), p. 96-98. Other than seeing Deputy Alessandrini's name on the police report, he has no idea who he is or what he allegedly did. Id., p. 97. Asked whether other force was used by Deputy Phillips other than to grab Plaintiff's wrist and struggle with him to the ground, Plaintiff responded "no, because I can't remember who all was involved." Id., p. 98.

The force used by Deputies Phillips and Alessandrini to effectuate Plaintiff's arrest was only that amount of force necessary, from an objectively reasonable officer's viewpoint, to secure the Plaintiff, who was admittedly resisting arrest. In addition, Plaintiff has not come forward with any evidence to demonstrate that he suffered any tangible physical injuries as a result of the force utilized by either Deputy to effectuate his arrest. Even if he did suffer some minor injury it would not render the "force" used unreasonable. Carter v. Morris, 164 F.3d 215, 219 n.3 (4th Cir. 1999)(holding that plaintiff's allegation of excessive force based on handcuffs being too tight and officer pushing her legs were "so insubstantial that [they could] not as a matter of law support her claim under either the Fourth Amendment or the Fourteenth").

---

[9]     Plaintiff did not complain of any injuries whatsoever due to the incident, although four days later he visited the emergency room because he believed his face looked swollen. Exhibit 9, p. 87-89. At the hospital, Plaintiff insisted the doctors conduct an MRI. Plaintiff sought no further medical treatment at all. Id., p. 95-97.

In <u>Brown v. Gilmore</u>, the plaintiff argued that the force used in dragging her was unreasonable because she was not resisting arrest.  Officer Gilmore, on the other hand, thought that she was attempting to resist.  The Court noted that "this subjective clash of beliefs" was not one that they needed to resolve because "'[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.'" <u>Brown v. Gilmore</u>, 278 F.3d at 369 (quoting <u>Saucier v. Katz</u>, 533 U.S. at 205).  In the instant case, there is no mistake that Plaintiff resisted arrest, as Plaintiff admittedly grabbed Deputy Phillips' wrist when he attempted to handcuff Plaintiff and then refused to get down, pulled his hands and arms away, and walked away as the Deputies struggled to handcuff him.  However, should the Court find a "subjective clash of beliefs" on this issue, the use by Deputy Phillips of his arms to try to grab and control Plaintiff's arms to handcuff him was clearly reasonable, as was Deputy Alessandrini's use of pepper spray on Plaintiff after he ignored several orders to "get down" and attempted to "walk away" from the Deputies as they struggled to subdue him.  Furthermore, these events occurred under tense and rapidly evolving circumstances wherein a large (and possibly volatile) crowd was looking on.  Plaintiff's own version of the facts reveals that the amount of "force" utilized to effectuate Plaintiff's arrest was entirely reasonable and in no manner violated the Fourth Amendment.  Deputies Phillips and Alessandrini used only that amount of force that was necessary and reasonable to effectuate Plaintiff's arrest in a heated, tense and rapidly evolving situation.  Accordingly, Defendants are entitled to summary judgment in their favor with respect to Plaintiff's state law claims in Counts VI, VII, XIV and XV.

19

**D.      Defendants Are Entitled to Summary Judgment With Respect to Plaintiff's Assault and Battery Claims.**

For the reasons set forth in Section A. above, Defendants are entitled to summary judgment with respect to Plaintiff's Assault and Battery claims in Counts I, II, IX and X.

Moreover, a police officer is not responsible if he or she inflicts an injury on a person who is being arrested, unless the officer acts with malice (or gross negligence) toward that person. Lee v. Cline, 384 Md. 245, 863 A.2d 297 (2004); Davis v. Muse, 51 Md. App. 93, 441 A.2d 1089 (1982); see also, Brewer v. Mele, 267 Md. 437, 298 A.2d 156 (1972). There is not a shred of evidence in this case that Defendants acted intentionally to injure Plaintiff, that they harbored ill will towards Plaintiff, or that they were otherwise motivated by malice. Accordingly, on this basis as well, Defendants are entitled to summary judgment with respect to Plaintiff's assault and battery claims.

Plaintiff again argues that he was "kneed in the face" after he was handcuffed. However, the problem with this assertion is that Plaintiff's own testimony establishes that he was allegedly kneed in the face by the third Deputy to arrive, who was wearing shorts. That Deputy ("Deputy Arnold") was not sued by Plaintiff and is not a Defendant herein.

**E.      Defendants Are Entitled to Summary Judgment With Respect to Plaintiff's False Imprisonment and False Arrest Claims.**

For the reasons already discussed, Defendants had probable cause to arrest Plaintiff and, thus, they are not liable for false arrest or false imprisonment. See Williams v. Prince George's County, 112 Md. App. 526, 554-55, 685 A.2d 884, 898 (1996)(holding police officers are not liable for battery, false imprisonment or false arrest when there is legal justification for arrest and force

used was not excessive); <u>Hines v. French</u>, 57 Md. App. 536, 852 A.2d 1047 (2004)(false imprisonment, false arrest, and assault and battery can only occur when there is no legal authority or justification for the arresting officer's actions).

**F.     Defendants Are Entitled to Summary Judgment With Respect to Plaintiff's Malicious Prosecution Claim.**

Plaintiff asserts claims of malicious prosecution against Defendants in Counts V (Deputy Phillips) and XIII (Deputy Alessandrini).  In order to establish the tort of malicious prosecution, a plaintiff must show: (1) the defendant instituted a criminal proceeding against the plaintiff; (2) the criminal proceeding was resolved in the plaintiff's favor; (3) the defendant did not have probable cause to institute the proceeding; and (4) the defendant acted with malice or a primary purpose other than bringing the plaintiff to justice.  <u>Hines v. French</u>, 157 Md. App. at 553-54, 852 A.2d at 1057.  Plaintiff cannot establish elements one, three or four as to Deputy Alessandrini, and Plaintiff cannot establish elements three or four as to Deputy Phillips.  Deputy Alessandrini is not the deputy who instituted criminal proceedings against Plaintiff (Deputy Phillips did so) and, thus, Alessandrini cannot be held liable for malicious prosecution regardless of the existence (or non-existence) of the other factors.[10] <u>See</u>, Statement of Charges, Exhibit 7 (prepared by Deputy Phillips).

Moreover, as explained in detail above, neither of the Defendants can be held liable for malicious prosecution because there was plainly probable cause to arrest and charge Plaintiff for the crime of trespassing.  Further, and also as explained above, based upon Plaintiff's (admitted)

---

[10]     Contrary to Plaintiff's assertion, <u>Hines v. French</u>, did not address this situation nor was the argument raised in that case.

actions during the arrest, Deputy Phillips also had probable cause to charge Plaintiff with resisting arrest and assault upon Deputy Phillips.  Plaintiff admitted that when Deputy Phillips grabbed his wrist and told him he was under arrest, Plaintiff grabbed Phillips' arm and resisted by refusing to be handcuffed, by failing to obey orders to get down and by walking away from Defendants as they struggled to get handcuffs on him.  Thus, there was probable cause to charge Plaintiff with both resisting arrest and second degree assault on Phillips.  Finally, and as discussed above, there is no evidence whatsoever to indicate malice.  Therefore, Defendants are entitled to summary judgment with respect to Counts V and XIII.

## CONCLUSION

For all of the foregoing reasons, Defendants are entitled to summary judgment as a matter of law.

Respectfully submitted,

KARPINSKI, COLARESI & KARP

BY: _____/s/_____
KEVIN KARPINSKI


_____/s/_____
VICTORIA M. SHEARER
Suite 1850
120 East Baltimore Street
Baltimore, Maryland 21202
410-727-5000
Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of August 2006, a copy of the foregoing Reply to

Plaintiff's Opposition to Defendants' Motion for Summary Judgment was electronically filed with

notice to:

Sherwood R. Wescott, Esquire
Lamont B. Stewart, Esquire
Wescott, Luke & Rowe, LLC
220 East Main Street
Suite B
Salisbury, Maryland 21801
*Attorneys for Plaintiff*


                                        _____/s/_____
                                        Of Counsel for Defendants